## UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK, NEW YORK

**BEFORE: UNASSIGNED**

| | |
|---|---|
| **INTERPIPE UKRAINE LLC and**<br>**NORTH AMERICAN INTERPIPE, INC.**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**UNITED STATES,**<br><br>    **Defendant.** | Case No. 21- 00530 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs Interpipe Ukraine LLC ("Interpipe Ukraine") and North American Interpipe, Inc. ("NAI") (collectively, "Interpipe") bring this Complaint against the United States of America, by and through undersigned counsel, and allege and state as follows:

## PARTIES

1. Interpipe Ukraine is a foreign exporter of seamless carbon and alloy steel standard, line, and pressure pipe ("SSLPP") from Ukraine. NAI is a U.S. importer of SSLPP from Ukraine. Interpipe Ukraine is headquartered in Dnipro, Ukraine, and NAI is headquartered in Houston, Texas.

2. Defendant United States of America is the Federal Government of the United States of America.

## DETERMINATION TO BE REVIEWED

3.  Interpipe contests certain aspects of the final determination issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its antidumping duty ("AD") investigation of SSLPP from Ukraine, Case No. A-823-819. The AD final determination was published as *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Ukraine: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 35,272 (Dep't Commerce July 2, 2021) ("*Final AD Determination*"). The AD Order was published as *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe From the Republic of Korea, the Russian Federation, and Ukraine: Antidumping Duty Orders*, 86 Fed. Reg. 47,055 (Dep't Commerce Aug. 23, 2021) ("*AD Order*"). This appeal also contests certain aspects of Commerce's accompanying Issues and Decision Memorandum for the Final AD Determination in the Less Than Fair Value Investigation of SSLPP from Ukraine, dated June 25, 2021 ("*Final Issues and Decision Memo*") and the Final Determination Analysis, dated June 25, 2021. The period of investigation ("POI") was July 1, 2019 through June 30, 2020.

## JURISDICTION

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers exclusive jurisdiction on the U.S. Court of International Trade to review final AD determinations issued by Commerce under Sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930 (the "Act"), *as amended*, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), (B)(i).

## STANDING OF PLAINTIFF

5.  Interpipe was selected as the sole respondent and participated in the AD investigation that is the subject of this action. Interpipe is therefore an interested party within the

meaning of section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

6.  Section 516A(a)(2)(A)(i) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within thirty (30) days of the date of publication in the *Federal Register* of the order, and the complaint must be filed within thirty (30) days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(i). On September 21, 2021, within thirty (30) days after the publication of the *AD Order* on August 23, 2021, Interpipe filed a summons with this Court. On October 21, 2021, within thirty (30) days thereafter, Interpipe filed this Complaint. This action is thus timely brought.

## STANDARD OF REVIEW

7.  This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

8.  Vallourec Star, LP (the "Petitioner") filed an AD petition on July 8, 2020 (the "Petition") concerning imports of SSLPP from Ukraine and other countries. Commerce then initiated the AD investigation on August 4, 2020 and indicated it intended to individually examine Interpipe. *SSLPP From the Czech Republic, the Republic of Korea, the Russian Federation, and Ukraine: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 47,176 (Dep't Commerce Aug. 4, 2020).

9. Commerce issued an AD questionnaire to Interpipe on August 19, 2020. *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Ukraine From Ukraine: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 Fed. Reg. 8,889 (Dep't Commerce Feb. 10, 2021) ("*Preliminary AD Determination*") and accompanying Decision Memorandum, dated February 3, 2021 ("*Preliminary Decision Memo*") at 2.

10. At Petitioner's request, Commerce postponed the deadline for the Preliminary Determination on November 19, 2020. *Id.* at 3.

11. Interpipe timely submitted responses to Commerce's initial AD questionnaire and supplemental questionnaires from September 16, 2020 to January 22, 2021. *Id.* at 2-3.

12. Interpipe submitted new factual information on January 4, 2021, to further illustrate that tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862) ("Section 232") are special duties akin to antidumping and countervailing ("AD/CVD") duties. *Id.* at 3. Therefore, the Section 232 tariffs imposed on certain steel products imported into the United States pursuant to President Donald J. Trump's Proclamation 9705 should not be deducted from the U.S. price. *See Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 11,625 (Mar. 15, 2018).

13. Interpipe submitted pre-Preliminary Determination comments on January 14, 2021, arguing that Commerce should not deduct Section 232 duties from the U.S. price when calculating a margin. *See* Interpipe's Pre-Preliminary Determination Comments (Jan 14, 2021). And on January 25, 2021, Interpipe responded to Petitioner's pre-Preliminary Determination comments by rebutting Petitioner's allegation that the general and administrative ("G&A") offset for sales of

4

current assets should be denied. *See* Interpipe's Response to Petitioner's January 19, 2021 Pre-Preliminary Determination Comments (Jan. 25, 2021).

15. On February 10, 2021, Commerce published in the *Federal Register* the Preliminary Determination, assigning preliminary AD rates of 41.23% to Interpipe Ukraine/PJSC Interpipe Niznedneprovksy Tube Rolling Plant/LLC Interpipe Niko Tube and 41.23% to "all other" companies. *Preliminary AD Determination* at 8,890 (Dep't Commerce Feb. 10, 2021).

15. In its case brief, Interpipe requested that Commerce should (a) make a constructed export price ("CEP") offset pursuant to section 773(a)(7)(B) of the Act; (b) not deduct Section 232 duties from the U.S. price pursuant to section 772(c)(2)(A) of the Act; and (c) include sales of current assets like raw materials in the G&A expense calculation. *Final Issues and Decision Memo* at 8-23; Interpipe's Case Br. at 4-18.

16. On July 2, 2021, Commerce published its Final AD Determination in the *Federal Register*. *Final AD Determination*. Commerce disagreed with Interpipe and continued to find that a CEP offset is not warranted. *Final Issues and Decision Memo* at 9-15. Commerce stated that Interpipe did not separately report the selling functions, and the level at which it performed those functions, for each home market channel of distribution and that Interpipe did not provide a quantitative analysis. *Id.*

17. Commerce also disagreed with Interpipe and continued to deduct Section 232 duties from the price of U.S. sales of subject merchandise in calculating Interpipe's dumping margin. *Id.* at 16-19. According to Commerce, Section 232 duties should be treated as "United States import duties" under section 772(c)(2)(A) of the Act. *Id.* For example, Commerce claimed that Section 232 duties are not akin to AD/CVD duties or duties imposed pursuant to Section 201 of the Trade Act of 1974 (19 U.S.C. § 2251) because Section 232 duties do not remedy injury to domestic

5

industries. Moreover, Commerce stated that Section 232 duties are not tentative in nature despite Interpipe's pending lawsuit in this Court regarding Commerce's denials of its Section 232 exclusion requests. *Id.*

18. Commerce also disagreed with Interpipe and continued to exclude the other income and expenses related to sales of current assets and other materials like raw materials and scrap from the calculation of G&A expenses. *Id.* at 20-23. Commerce claimed that the sale of these items by Interpipe was a separate line of business, "other than Interpipe's main business – the manufacture and sale of pipes." *Id.* In its final determination, Commerce also asserted that Interpipe failed to provide further information about the other operating income and expense general ledger accounts that were included in Interpipe's reported G&A expenses; and failed to demonstrate ("or even claim") that its assets sales were related to obsolete raw materials. *Id.* Finally, Commerce agreed with Interpipe that the claimed offset for scrap should reflect the market value of the scrap, but concluded that Interpipe should have proposed an adjustment to the scrap quantities generated using the scrap sales prices actually charged during the POI, and failed to do so. *Id.*

19. Commerce assigned final duty rates of 23.75% to Interpipe Ukraine/PJSC Interpipe Niznedneprovksy Tube Rolling Plant/LLC Interpipe Niko Tube and 23.75% to "all other" companies. *Final AD Determination* and *AD Order.*

20. The *AD Order* was published in the *Federal Register* on August 23, 2021.

## STATEMENT OF CLAIMS

### COUNT ONE

21. Paragraphs 1 to 20 are adopted and incorporated herein by reference.

22. Interpipe specified that the selling activities, and the level at which it performed those functions, reported for the home market applied to both home market channels of distribution. Commerce's decision not to grant a CEP offset based on the allegation that it did not specify the selling activities in its channels of trade in the home market is not supported by substantial evidence on the record and is otherwise not in accordance with law.

23. In addition, the Department's decision to deviate from its prior practice, which was to grant a CEP offset to Interpipe, is not supported by substantial evidence on the record and is otherwise not in accordance with law.

24. The Department's determination that Interpipe did not provide the requisite quantitative analysis is not supported by substantial evidence on the record and is otherwise not in accordance with law. There is no support for the Department's argument that respondents must provide a quantitative analysis.

25. Moreover, Interpipe did, in fact, provide a quantitative analysis demonstrating that indirect selling expenses vary between the home market level of trade and the CEP level of trade. Therefore, Commerce's decision that a CEP offset is not warranted in the *Final AD Determination* is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## COUNT TWO

26. Paragraphs 1 to 25 are adopted and incorporated herein by reference.

27. Interpipe demonstrated that Section 232 duties should not be considered "United States import duties" as they are akin to tariffs like AD/CVD and Section 201 that have traditionally not been deducted from U.S. price. Moreover, Interpipe demonstrated that Section 232 duties are temporary and tentative (and thus distinct from "United States import duties"), both in general as applied to Interpipe, because the assessment of Section 232 tariffs against Interpipe's

imports is not final (given the on-going appeal regarding Section 232 exclusions), as there is a high degree of probability that such tariffs will be refunded or otherwise adjusted. Therefore, Commerce's decision to deduct Section 232 duties from the U.S. price when calculating the margin in the *AD Final Determination* is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## COUNT THREE

28. Paragraphs 1 to 27 are adopted and incorporated herein by reference.

29. Interpipe reported the income and related expenses on the sale of current assets and other assets like raw materials in other operating income and expense in its books and records, and not as part of the sales and costs of sales of their main business, i.e. the sale of steel products. Commerce's *Final AD Determination* assumed that the sale of raw materials by Interpipe was a separate line of business, "other than Interpipe's main business – the manufacture and sale of pipes." *Final Issues and Decision Memo* at 21. As these sales of current assets like raw materials were reported in other operating income and expense and not in revenue and cost of sales, these sales were not a line of business but rather were incidental to Interpipe's main line of business: the manufacture and sale of pipes. As such, these are related to Interpipe's general business of producing and selling pipes and should be included in the G&A. Further, Interpipe provided the requested information about the other operating income and expense general ledger accounts at Exhibits SD-27 and SD-29 for each plant and explained why they should be deducted from the calculation. *See* Interpipe's Section D Supplemental Questionnaire Response (Dec. 16, 2021); Interpipe's Case Br. at 11. Interpipe also claimed that it is Commerce's practice to include losses and gains on the sales of assets in the G&A expense ratio calculation, including, for example, "*obsolete* raw material inventory" and explained that the income from the sales of current assets

8

in questions "is a revenue side of the inventory sale transaction."  *See* Interpipe's Response to Petitioner's January 19, 2021 Pre-Preliminary Determination Comments (Jan. 25, 2021) at 5; Interpipe's Case Br. at 13-14.  Finally, Interpipe explained that the scrap offset requested does not relate to the production costs and it is appropriately included in the G&A calculation.  *See* Interpipe's Response to Petitioner's January 19, 2021 Pre-Preliminary Determination Comments (Jan. 25, 2021) at 6; Interpipe's Case Br. at 15-18. Therefore, Commerce's decision to exclude the other income and expenses related to sales of raw materials and scrap from the G&A expense calculation in the *Final AD Determination* is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) hold that the *Final AD Determination* is unsupported by substantial evidence and otherwise not in accordance with law;

(b) remand the *Final AD Determination* to Commerce with instructions to issue a new determination and take other actions, as appropriate, consistent with this Court's decision; and

(c) provide such other and further relief as this Court deems just and proper.

          Respectfully submitted,

          /s/ H. Deen Kaplan
          H. Deen Kaplan
          Jared R. Wessel
          Maria A. Arboleda
          Molly B. Newell
          Gregory M.A. Hawkins

          HOGAN LOVELLS US LLP
          Columbia Square
          555 Thirteenth Street, N.W.
          Washington, DC 20004-1109
          (202) 637-5799
          deen.kaplan@hoganlovells.com

          *Counsel to Interpipe Ukraine LLC and North American Interpipe, Inc.*

Date: October 21, 2021